**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

P.J. PARMAR,

 Plaintiff,

v.

CITY OF AURORA, COLORADO, a municipal corporation and;
JUSTIN E. HENDERSON, in his official and individual capacity;

 Defendants.

## COMPLAINT AND JURY DEMAND

 Plaintiff, by and through his attorneys David Lane and Andy McNulty, of KILLMER, LANE & NEWMAN, LLP respectfully alleges for his Complaint and Jury Demand as follows:

### INTRODUCTION

 1. This is an action against Aurora and its police officer Justin E. Henderson for violation of the Fourth and Fourteenth Amendments to the United States Constitution.

 2. Henderson pointed a gun at Dr. P.J. Parmar simply because he honked his car horn at Henderson, who was blocking the entrance to, and trespassing on, Dr. Parmar's property. Henderson threatened Dr. Parmar with deadly force without reasonable suspicion or probable cause that Dr. Parmar had committed any crime, and without reasonable fear that Dr. Parmar posed any threat to his safety or the safety of any third parties.

 3. These actions were in line with Aurora's customs, practices, policies, and training, which allow its officers to use excessive force (and, particularly, elevated force against people of color) without consequence.

1

## JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

5. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

7. At all times relevant to this complaint, Dr. P.J. Parmar was a citizen of the United States of America and a resident of and domiciled in the State of Colorado.

8. Defendant City of Aurora, Colorado, ("Aurora") is a Colorado municipal corporation, and enforces local and state law through its law enforcement agencies, including the Aurora Police Department ("APD").

9. At all times relevant to this Complaint, Defendant Henderson was a citizen of the United States and a resident of Colorado and was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer employed by the Aurora Police Department.

## FACTS[1]

10. On the evening of Sunday, March 1, 2020, Dr. Parmar, who is of Asian-Pacific

---

[1] For the sake of continuity and brevity, all facts in support of and relevant to Plaintiff's *Monell* claim are included in a supplemental **Exhibit 1** filed contemporaneously with this Complaint. All statements of fact included in **Exhibit 1** are hereby incorporated into this Complaint by reference as though fully set forth herein.

2

descent, was moving Boy Scout gear from one of several properties he owns. Dr. Parmar is engaged in helping refugees to the United States and the property in question is called the [Mango House](). He is a prominent member of his community who is know for his philanthropic work. But, to Defendant APD officer Justin Henderson, he was just another person of color.

11. When Dr. Parmar arrived at his garage he found Henderson parked on his property and partially blocking the entry. Dr. Parmar had "no trespassing" signs posted throughout the property. Despite this, Henderson ignored those signs. He was trespassing on Dr. Parmar's property.

12. Dr. Parmar stopped and briefly honked at Henderson. In response to this simple act, Henderson immediately pulled out his gun while hurrying toward Dr. Parmar's car.

13. When he arrived at Dr. Parmar's vehicle, Henderson pointed his gun at Dr. Parmar's head while shining his flashlight in Dr. Parmar's eyes. Henderson yelled at Dr. Parmar, "[l]et me see your fucking hands!" then ordered Dr. Parmar to stay in his vehicle. Dr. Parmar briefly hesitated in getting out of his vehicle upon the threat posed by Henderson pointing his gun at Dr. Parmar's head. Dr. Parmar was seized by the threat of Henderson using deadly force against him.

14. Dr. Parmar then told Henderson that he was on his own property and asked Henderson to please leave the property. Henderson, not believing that a person of color could own such a property, asked Dr. Parmar for proof that it was, in fact, his property.

15. Dr. Parmar then, despite Henderson's continued implicit threat of deadly force (which was conveyed by the fact that Henderson continued to hold his gun unholstered and pointed at Dr. Parmar), exited his vehicle and began going about the business that he had come to his property to attend to.

16. Dr. Parmar kept asking Henderson to leave his property, and Henderson repeatedly demanded that Parmar prove that it was his property. Instead of leaving, Henderson called in two other police officers. Even after Dr. Parmar unlocked the door to the property and began to unload boxes into the building, Henderson continued to remain on Dr. Parmar's property.

17. Henderson harassed Dr. Parmar for the next ten minutes, continually telling him that he was in the wrong for pulling into, and honking at Henderson for blocking the entrance to, *Dr. Parmar's own property*.

18. Henderson then threatened Dr. Parmar, saying that he could cite him with multiple bogus charges including "careless driving." Henderson was attempting to to intimidate Dr. Parmar.

19. The other officers who arrived on-scene did nothing to intervene to stop Henderson's continued intimidation of Dr. Parmar. Instead, they also told Dr. Parmar that they could cite him for other bogus charges, including blocking a city sidewalk.

20. This type of behavior is customary in Aurora. Officers consistently discriminate and abuse people of color, and use excessive force, and then file bogus and retaliatory charges to cover-up their unconstitutional actions, as outlined in **Exhibit 1**.

21. After approximately ten minutes all three officers left with no citation issued to Dr. Parmar for anything. No citation was issued to Dr. Parmar because he had committed no crime, and there was no rational basis for an objectively reasonable officer to have any suspicion whatsoever, let alone reasonable suspicion, that Dr. Parmar committed any crime. There was certainly no probable cause to believe that Dr. Parmar had committed any crime.

22. Henderson pointed his gun at Dr. Parmar, and threatened him with arrest, simply because he did not like that Dr. Parmar honked at him. At no time did Henderson have any belief,

4

reasonable or otherwise, that Parmar posed any physical threat to his safety.

23. Defendant Aurora has a shameful history of engaging in a custom, practice and policy of failing to train and supervise its officers in the appropriate use of force, as outlined in **Exhibit 1**.

24. Defendant Aurora has a custom, practice and policy of condoning and approving of the use of excessive force by its officers, as outlined in **Exhibit 1**.

25. Upon information and belief, Defendant Aurora has not disciplined, or otherwise reprimanded, Henderson for his unconstitutional treatment of Dr. Parmar.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 – Fourth Amendment*
*Unlawful Seizure*

26. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

27. At all times relevant to this Complaint, Defendant Henderson was acting under the color of state law.

28. Defendant Henderson did not at any time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff had committed or was committing any violation of the law prior to seizing and detaining him.

29. Defendant did not at any time have a reasonable basis for believing that Plaintiff was a danger to any person.

30. Defendant did not at any time have a warrant authorizing any such seizure, and/or detention of any Plaintiff's body or belongings.

5

31. Defendant Henderson briefly seized and detained Plaintiff at gunpoint and did not allow him to leave.

32. During this seizure Defendant Henderson detained Plaintiff against his will, despite lacking any legally valid basis for his actions.

33. At the time when Defendant Henderson detained Plaintiff without probable cause Plaintiff's Fourth Amendment right to be secure in his person from unreasonable seizures was clearly established.

34. Defendant Henderson violated Plaintiff's clearly established Fourth Amendment rights by engaging in an unlawful seizure that was objectively unreasonable in light of the facts and circumstances confronting him.

35. The acts or omissions of Defendant Henderson was the moving force behind, and the proximate cause of the injuries sustained by Plaintiff.

36. Defendant Aurora failed to properly train, supervise, and/or discipline its employees regarding the constitutional requirement not to unlawfully seize those who have committed no crime, resulting in the Defendant Henderson's unlawful seizure of Plaintiff. Defendant Aurora particularly failed to properly train, supervise, and/or discipline its employees regarding the proper circumstances for seizing individuals under the Fourth Amendment as is set forth more fully in attached **Exhibit 1**.

37. Defendant Henderson was engaged in these acts pursuant to the formal or informal custom, policy and practice of Defendant Aurora, which encourages, condones, tolerates, and ratifies the unlawful seizure of its citizens by law enforcement officers, as set forth in detail in attached **Exhibit 1**. This formal or informal custom, policy and practice of Defendant

6

Aurora is so permanent and well settled as to constitute custom and has been ratified by final policymakers.

38. The acts or omissions of Defendant Aurora caused Plaintiff's damages.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - Fourth Amendment
### Excessive Force

39. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

40. At all relevant times hereto, Defendant Henderson was acting under the color of state law in his capacity as an Aurora law enforcement officer.

41. Plaintiff had a protected Fourth and Fourteenth Amendment interest against being unreasonably seized and victimized by the use of excessive force at the hands of law enforcement personnel.

42. Defendant Henderson never at any time had a legally valid basis to seize Plaintiff under the circumstances and in the manner described more fully herein.

43. Defendant Henderson unlawfully seized Plaintiff by means of excessive physical force.

44. Defendant Henderson had no warrant authorizing any seizure of Plaintiff.

45. Defendant Henderson's actions were objectively unreasonable in light of the circumstances confronting him.

46. Plaintiff had committed no crime (nor could Defendant Henderson have reasonably believed he had committed any crime) that would legally justify the use of such force, he gave the officer no reason to fear for his, or anyone else's safety and he was not resisting arrest or fleeing.

47. Accordingly, Defendant Henderson's act of pointing a gun at Dr. Parmar, constituted excessive force.

48. Defendant Henderson engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

49. Defendant Aurora failed to properly train, supervise, and/or discipline its employees regarding the proper use of physical restraint and force, resulting in the use of excessive force. Defendant Aurora particularly failed to properly train, supervise, and/or discipline its employees regarding the constitutional limits on use of force, particularly regarding how to avoid engaging in racially biased or disproportionately aggressive policing as set forth in detail in attached **Exhibit 1**.

50. Defendant Henderson was engaged in these acts pursuant to the formal or informal custom, policy and practice of Defendant Aurora, which encourages, condones, tolerates, and ratifies the unlawful use of force by law enforcement officers, as set forth in detail in attached **Exhibit 1**. This formal or informal custom, policy and practice of Defendant Aurora is so permanent and well settled as to constitute custom and has been ratified by **final** policymakers.

51. Plaintiff has been and continues to be damaged by the Defendants' unreasonable seizure and use of excessive force. Plaintiff has endured and continues to endure mental pain, including humiliation, fear, anxiety, some loss of enjoyment of life, a fear of a loss of liberty, privacy, and sense of security and individual dignity, among other injuries, damages, and losses.

52. Defendant Henderson's acts or omissions described herein, including the unconstitutional policy, procedure, custom and/or practice described herein, were the legal and

proximate cause of all Plaintiff's damages.

53. At the time when the Defendant unlawfully seized him, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in their persons from unreasonable seizure through excessive force.

54. Defendant Henderson is not entitled to Qualified (or any other) Immunity. Any reasonable law enforcement officer knew or should have known of this clearly established right.

55. Defendants' actions, as described above, were motivated by intent to harm Plaintiff.

56. Defendants' actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of all Plaintiff's federally protected rights.

## THIRD CLAIM FOR RELIEF
### *42 U.S.C. § 1983 - Fourteenth Amendment*
### *Excessive Force*

57. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

58. Defendant Henderson acted under color of state law, and within the course and scope of his employment, in his capacity as an officer of the APD at all times relevant to the allegations in this Complaint.

59. Defendant Henderson is a "person" under 42 U.S.C. § 1983.

60. Plaintiff had a protected Fourteenth Amendment Substantive Due Process interest against being unreasonably harmed by the use of excessive force at the hands of law enforcement personnel.

61. Defendant Henderson did not have, at any time, a legally valid basis to use force against Plaintiff.

62. Defendant Henderson's acts of pointing his loaded firearm at Plaintiff constituted outrageously excessive force.

63. Defendant Henderson's use of force was extremely disproportionate.

64. Defendant Henderson acted with malice and/or excessive zeal amounting to an abuse of power.

65. Defendant Henderson acted for the purpose of causing harm unrelated and unnecessary to any relevant policing objective.

66. Defendant Henderson's actions were arbitrary and/or conscience shocking in light of the circumstances confronting him.

67. Defendant Henderson engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally-protected rights.

68. At the time when Defendant Henderson used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be secure from excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

69. Defendant Aurora failed to properly train, supervise, and/or discipline its employees regarding the constitutional requirement not to use excessive force, resulting in the Defendant Henderson's use of excessive force. Defendant Aurora particularly failed to properly train, supervise, and/or discipline its employees regarding the proper use of force as is set forth more fully in attached **Exhibit 1.**

10

70. Defendant Henderson was engaged in these acts pursuant to the formal or informal custom, policy and practice of Defendant Aurora, which encourages, condones, tolerates, and ratifies the unlawful use of force by law enforcement officers, as set forth in detail in attached **Exhibit 1**. This formal or informal custom, policy and practice of Defendant Aurora is so permanent and well settled as to constitute custom and has been ratified by **final** policymakers.

71. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

72. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages

## FOURTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 - Fourteenth Amendment*
*Denial of Equal Protection*

73. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

74. Defendant Henderson was acting under color of state law in their actions and inactions at all times relevant to this action.

75. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

76. Plaintiff's race was a motivating factor in the Defendant Henderson's decision to use excessive force, and in the decisions regarding how much force to use, against him.

Defendant Henderson acted with the purpose of depriving Plaintiff of the equal protection and benefits of the law, and equal privileges and immunities under the law, in violation of the Fourteenth Amendment.

77. Defendant Henderson treated Plaintiff less favorably than similarly situated white counterparts, wholly or in part because of his race.

78. There was no rational basis for Defendant Henderson's discriminatory actions, let alone a purpose narrowly tailored to serve a compelling governmental interest.

79. Defendant Henderson used excessive force against Plaintiff, as described herein, without reasonable suspicion or probable cause to believe Plaintiff had committed a crime or posed a threat of harm or fleeing that would legally justify the level of force used.

80. Defendant Henderson intentionally, willfully, unreasonably and wantonly seized Plaintiff by using excessive force against him, as described herein, wholly or in part due to Plaintiff's race.

81. Defendant Henderson's actions were objectively unreasonable in light of the facts and circumstances confronting him.

82. Defendant Henderson engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to and reckless disregard of Plaintiff's federally protected constitutional rights.

83. Defendant Aurora failed to properly train, supervise, and/or discipline its employees regarding the constitutional requirement not to engage in racially biased policing, resulting in Defendant Henderson's unlawful seizure of Plaintiff and use of excessive force. Defendant Aurora particularly failed to properly train, supervise, and/or discipline its employees regarding the proper use of physical restraint and force against people of color, and the

prohibition on using racially biased excessive force as is set forth more fully in attached **Exhibit 1**.

84. Defendant Henderson was engaged in these acts pursuant to the formal or informal custom, policy and practice of Defendant Aurora, which encourages, condones, tolerates, and ratifies the unlawful use of racially discriminatory force by law enforcement officers, as set forth in detail in attached **Exhibit 1**. This formal or informal custom, policy and practice of Defendant Aurora is so permanent and well settled as to constitute custom and has been ratified by **final** policymakers.

85. Aurora's inadequate training, supervision, and/or discipline resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Aurora.

86. In light of the duties and responsibilities of personnel of Defendant Aurora – who must police and interact with people of color on a regular basis – the need for specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Aurora is liable for its failure to properly train, supervise, and/or discipline its subordinate employees and agents.

87. Such failure to properly train, supervise, and/or discipline was a moving force behind and proximate cause of Defendant Henderson's racially biased treatment of Plaintiff, and constitutes an unconstitutional policy, procedure, custom, and/or practice.

88. Defendant Aurora's failure to train and/or supervise, as described herein, was a legal and proximate cause of Plaintiff's injuries.

89. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and

continue to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law and equity, including, but not limited to the following:

    a. Declaratory relief and injunctive relief, as appropriate;

    b. Actual economic damages as established at trial;

    c. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

    d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

    e. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

        i. Issuance of a formal written apology from each Defendant to Plaintiff;

        ii. The imposition of appropriate policy changes designed to avoid future similar misconduct by Defendants;

        iii. Mandatory training designed to avoid future similar misconduct by Defendants;

        iv. Imposition of disciplinary action against appropriate employees of Denver;

    f. Pre-judgment and post-judgment interest at the highest lawful rate;

    g. Attorney's fees and costs; and

    h.   Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 15th day of September 2020.

                      KILLMER, LANE & NEWMAN, LLP

                      *s/ David A. Lane*
                      _____
                      David A. Lane
                      Andy McNulty
                      1543 Champa Street, Suite 400
                      Denver, Colorado 80202
                      Phone: (303) 571-1000
                      Facsimile: (303) 571-1001
                      dlane@kln-law.com
                      amcnulty@kln-law.com

                      ATTORNEYS FOR PLAINTIFF